# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Lee Stasa                          :
                                          :
              v.                          :    No. 1695 C.D. 2019
                                          :    Submitted: May 29, 2020
Commonwealth of Pennsylvania,             :
Department of Transportation,             :
Bureau of Driver Licensing,               :
              Appellant                   :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE J. ANDREW CROMPTON, Judge


**<u>OPINION NOT REPORTED</u>**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED: October 27, 2020**

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) appeals from a November 14, 2019 Order of the Court of Common Pleas of Allegheny County (trial court), which sustained the statutory appeal of Robert Lee Stasa (Licensee) from a one-year suspension of his operating privilege under Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), on the basis that Licensee did not refuse chemical testing. Because the trial court did not follow well-established precedent in concluding Licensee did not refuse chemical testing when Licensee did not provide an adequate breath sample, we reverse.

On April 3, 2019, the Department mailed Licensee a Notification of Suspension of Operator's Privilege for violating Section 1547 of the Vehicle Code by refusing a chemical test on March 1, 2019. (Reproduced Record (R.R.) at 6a.) Licensee filed a Petition to Appeal from Suspension of Operator's Privilege (Petition) on April 15, 2019. (*Id*. at 3a-5a.) In the Petition, Licensee alleged that he "[wa]s not guilty of the offense alleged." (*Id*. at 4a.)

On November 14, 2019, the trial court conducted a de novo hearing. In its Opinion issued pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a) (1925(a) Opinion), the trial court summarized the relevant testimony as follows:

> During the hearing Pittsburgh Police Officer Joshua Stinebaugh[] testified that on March 1, 2019, he responded to a reported vehicle accident. [Licensee] was in custody in the back of a police vehicle when he arrived at the scene. [Licensee] had glassy eyes, vomit on his shoes and smelled of alcohol. Officer Stinebaugh transported [Licensee] to the Special Deployment Division where Officer Rachmiel Gallman then took over. [Licensee] had glassy, bloodshot eyes, slurred speech and a strong odor of alcohol. Officer Gallman administered field sobriety tests, which [Licensee] failed. A 20[-]minute observation period occurred before Officer Gallman administered the [B]reathalyzer test.
> Officer Gallman was certified to administer the Datamaster DMT for chemical testing of breath. The machine was properly functioning, calibrated and certified for accuracy. Officer Gallman read the DL-26 form warnings to [Licensee] verbatim[,] and [Licensee] signed the form. Officer Gallman requested that [Licensee] submit to a [B]reathalyzer test[,] and [Licensee] stated unequivocally that he would submit to the chemical test of his breath. Officer Gallman showed [Licensee] the mouth piece and explained how to perform the test and used the analogy of blowing bubbles into chocolate milk, not drinking the chocolate milk. Officer Gallman told [Licensee] he would perform two tests. [Licensee] sucked back during the first test[,] which produced a suck back error on the Datamaster DMT. Officer Gallman gave [Licensee] another chance to provide a sufficient breath sample, but he sat back into the chair and said "f[***] you guys" and did not

2

attempt the test again. Officer Gallman deemed [Licensee's] conduct a refusal.

(1925(a) Opinion (Op.) at 2 (internal citations omitted).)[1]

Based upon this testimony, the trial court, from the bench, sustained Licensee's appeal on two grounds: first, that "the first time was not a refusal, it was inability to perform"; and second, that "there are supposed to be two tests, [but] there was only one." (R.R. at 73a.) The trial court issued an Order sustaining Licensee's appeal that same day. The Department filed a timely Notice of Appeal on November 21, 2019. (*Id*. at 81a.)

In its 1925(a) Opinion, the trial court further explained its reasoning for the Order, stating that "whether [Licensee] refused chemical testing" "is a factual question," and the trial court is the "exclusive fact-finder," which makes the credibility determinations and decides how to weigh the evidence. (1925(a) Op. at 3.) The trial court further explained that "[a] refusal is an affirmative act." (*Id*.) The trial court specifically found that Licensee "did not refuse to submit to the first chemical breath test," but instead Licensee was attempting to perform the Breathalyzer test, which he was unable to perform. (*Id*.) The trial court then looked at the plain meaning of the word "refusal" and found that it was "defined as '[t]he act of refusing, denial of what is asked.' The word 'refuse' is defined as '[t]o decline to do, permit, take or yield.' (Funk & Wagnalls *1982 New Comprehensive*

---

[1] Craig Simpson, Licensee's stepfather and an attorney, also testified at the hearing, but the trial court made no findings related to his testimony. The transcript reveals that Mr. Simpson testified that: he told officers he was representing Licensee when he arrived at the station, (R.R. at 59a-60a); Mr. Simpson asked if his stepson had taken the Breathalyzer test, and Officer Stinebaugh said "no, [Licensee] flat out refused," (*id*. at 60a); and Mr. Simpson asked Licensee if he was willing to take it, and he indicated yes, but Officer Stinebaugh said it was too late, (*id*. at 54a, 60a).

3

*International Dictionary of the English Language*, Encyclopedic Edition, J.G. Ferguson Publishing Company)." (1925(a) Op. at 4.) The trial court found:

> [Licensee] performed the [B]reathalyzer test once. He did not deny to perform and there was no act of refusing the first test. There was no evidence that [Licensee] deliberately refused chemical testing for the first test. It should be noted that the police observed this inability and [chose] to terminate the test rather than use blood testing. [Licensee] did not refuse to take the test since he consented to take the [B]reathalyzer test and performed the test.

(*Id.*) Accordingly, the trial court sustained Licensee's statutory appeal. (*Id.*)

On appeal,[2] the Department argues that it satisfied its burden of proof at the hearing. The Department further asserts that the trial court erred in stating that Licensee did not refuse the Breathalyzer test because a chemical test refusal does not require "an affirmative act," contrary to the trial court's determination. (Department's Brief (Br.) at 18-19 (quoting 1925(a) Op. at 3).) The Department argues that case law clearly states that Licensee's "failure to complete the first breath test is a refusal, as a matter of law." (*Id.* at 22 (citing *Dep't of Transp., Bureau of Driver Licensing v. Boucher*, 691 A.2d 450 (Pa. 1997); *Quick v. Dep't of Transp., Bureau of Driver Licensing*, 915 A.2d 1268 (Pa. Cmwlth. 2007); *Lucas v. Dep't of Transp., Bureau of Motor Vehicles*, 854 A.2d 639 (Pa. Cmwlth. 2004); *Sweeney v. Dep't of Transp., Bureau of Driver Licensing*, 804 A.2d 685 (Pa. Cmwlth. 2002); *Postgate v. Dep't of Transp., Bureau of Driver Licensing*, 781 A.2d 276 (Pa. Cmwlth. 2001); *Pappas v. Dep't of Transp., Bureau of Driver Licensing*, 669 A.2d

---

[2] "In reviewing a decision of the trial court in a license suspension case, the standard of review of an appellate court is to determine if the factual findings of the trial court are supported by competent evidence, and whether the trial court committed an error of law or an abuse of discretion." *Dep't of Transp., Bureau of Driver Licensing v. Boucher*, 691 A.2d 450, 453 (Pa. 1997).

4

504 (Pa. Cmwlth. 1996); *Dep't of Transp., Bureau of Traffic Safety v. Jones*, 395 A.2d 592 (Pa. Cmwlth. 1978)).) Additionally, the Department asserts that Licensee's oral response to the second test constituted a refusal, as a matter of law. (*Id.*) After the refusal, the Department argues, Officer Gallman "was not required to offer [Licensee] a third opportunity to complete the test." (*Id.* (citing *McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013)).) The Department also argues that, contrary to the trial court's assertion that Officer Gallman could have used blood testing instead of terminating the test, "Officer Gallman was under no obligation to offer [Licensee] a blood test after [Licensee] refused both breath tests." (*Id.* at 23.)

Licensee argues that the trial court, as exclusive fact-finder, was correct in its determination that there was no affirmative act of refusal, and instead Licensee had originally consented to the test as required. (Licensee's Br. at 4-5.) Licensee further asserts that the trial court was correct in concluding that whether Licensee consented is "a factual question." (*Id.* at 6.)

Under Section 1547(b)(1)(i) of the Vehicle Code, the Department is required to suspend a licensee's operating privilege for at least one year when the licensee is asked "to submit to chemical testing and refuses to do so." 75 Pa.C.S. § 1547(b)(1)(i). To issue a suspension under Section 1547(b)(1)(i), the Department must prove

> (1) [the l]icensee was arrested for violating Section 3802 of the Vehicle Code[, 75 Pa.C.S. § 3802,] by a police officer who had "reasonable grounds to believe" that Licensee was operating or was in actual physical control of the movement of a vehicle while in violation of Section 3802 (i.e., while driving under the influence); (2) [the l]icensee was asked to submit to a chemical test; (3) [the l]icensee refused to do so; and (4) [the l]icensee was specifically warned that a refusal would result in the suspension of his operating privileges . . . . Once that

5

burden is met, the licensee has the burden to prove that (1) he was physically incapable of completing the breath test or (2) his refusal was not knowing and conscious.

*Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005) (citing *Boucher*, 691 A.2d at 453). The question of whether a licensee's conduct constitutes a refusal to submit to a chemical test is a **legal one**, based on the facts found by the trial court. *Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 496 (Pa. Cmwlth. 2018). Failure to provide a sufficient breath sample is considered a refusal to submit to a chemical test. *Boucher*, 691 A.2d at 454 (citing *Pappas*, 669 A.2d at 508; *Dep't of Transp. v. Gross*, 605 A.2d 433, 435 (Pa. Cmwlth. 1991)). "Even a license[e]'s good faith attempt to comply with the test constitutes a refusal where the licensee fails to supply a sufficient breath sample." *Pappas*, 669 A.2d at 508. "A refusal is supported by substantial evidence[3] where the [B]reathalyzer administrator testifies that the licensee did not provide sufficient breath." *Id*. The Department may also establish refusal by admitting a printout form from the Breathalyzer test demonstrating that there was a "deficient sample." *Id*. (quoting *Dep't of Transp., Bureau of Driver Licensing v. Lohner*, 624 A.2d 792, 793 (Pa. Cmwlth. 1993)). Upon the Department establishing a failure to provide sufficient breath samples, refusal is presumed and the burden shifts to the licensee to **provide competent medical evidence** that the licensee was unable to perform the test. *Id*.

Contrary to the trial court's determination in its 1925(a) Opinion, whether Licensee's actions constituted a refusal is not a factual question, and instead is "a **legal** one, based on the facts found by the trial court." *Factor*, 199 A.3d at 496

---

[3] "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Washington v. Workers' Comp. Appeal Bd. (State Police)*, 11 A.3d 48, 54 n.4 (Pa. Cmwlth. 2011) (internal quotation omitted).

(emphasis added). Refusal is determined by considering "whether the [licensee's] overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Id*. at 496-97. Here, as found by the trial court, Licensee did not provide a sufficient breath sample as evidenced by both the testimony of Officer Gallman, who administered the Breathalyzer test, and the printouts of the two breath tests. In both printouts of the test, Department Exhibits 2 and 3, there were insufficient samples due to either a "SUCK BACK ERROR" or a "REFUSED" test in which no air was blown. (R.R. at 77a-78a.) Furthermore, the testimony of Officer Gallman supports the exhibits presented. In the first test, Licensee clearly sucked back, contrary to Officer Gallman's instruction to not "drink the milk" and only "blow bubbles." (*Id*. at 44a.) In the second attempt, Licensee refused the test by sitting back in the chair and saying "f[***] you guys." (*Id*. at 47a.) This was an explicit refusal. Accordingly, the printouts and Officer Gallman's testimony qualify as substantial evidence that Licensee did not provide sufficient breath samples, and, under our precedent, this qualifies as a refusal.

To the extent the trial court found Licensee did not refuse the first test because Licensee attempted the test but provided an insufficient sample, as discussed above, the inability to supply a sufficient sample is "a deemed refusal to submit to testing." *Boucher*, 691 A.2d at 454; *see also Pappas*, 669 A.2d at 508 (when a licensee does not supply a sufficient breath sample and does not exert a total conscious effort, it is considered a refusal to submit to a test). In short, the Department met its burden of proof. Under our precedent, when the Department successfully established that Licensee failed to provide sufficient breath samples, refusal was presumed, and the burden shifted to Licensee to submit competent medical evidence that he was unable to perform the test, *Pappas*, 669 A.2d at 508, or that "something impeded [Licensee]

7

from making a knowing and conscious failure to register a proper breath sample . . . because he did not understand what to do." *Martinovic*, 881 A.2d at 36. Licensee offered no evidence at the hearing as to any medical condition that prevented him from performing the test or that he did not understand the instructions. Nor does he argue to this Court that he did. Accordingly, it was error for the trial court to have sustained Licensee's appeal of his suspension because Licensee did not satisfy his burden once it shifted to him.

Based upon the foregoing, we reverse the trial court's Order and reinstate the suspension.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Lee Stasa               :

                                 :

          v.                :    No. 1695 C.D. 2019

                                 :

Commonwealth of Pennsylvania,    :

Department of Transportation,     :

Bureau of Driver Licensing,       :

                Appellant    :

## **O R D E R**

**NOW**, October 27, 2020, the Order of the Court of Common Pleas of Allegheny County, dated November 14, 2019, is **REVERSED**. The one-year suspension of the operating privilege of Robert Lee Stasa is hereby **REINSTATED**.

 

 

                             **RENÉE COHN JUBELIRER,** Judge