# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Evan Bauer,                 :

           Appellant         :

                         :

           v.              :    No. 412 C.D. 2022

                         :    Submitted:  August 26, 2022

Commonwealth of Pennsylvania,    :

Department of Transportation,     :

Bureau of Driver Licensing       :


BEFORE:     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                  **HONORABLE ANNE E. COVEY,** Judge
                  **HONORABLE LORI A. DUMAS,** Judge


<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED:  September 20, 2023**

Evan Bauer (Licensee) appeals from the March 16, 2022 Order of the Court of Common Pleas of Montgomery County (common pleas), which denied Licensee's statutory appeal and reinstated the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing's (Bureau), one-year suspension of his operating privilege.  Upon careful consideration, we affirm.


## I.    BACKGROUND

On March 17, 2019, Licensee was placed under arrest for driving under the influence of alcohol or a controlled substance (DUI) in violation of Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802.  Licensee refused to submit to chemical testing after being placed under arrest and read the DL-26B form.  (Reproduced Record

(R.R.) at 5.[1])  The Bureau notified Licensee via letter, with a mail date of April 5, 2019, that his operating privilege was suspended for a period of one year, effective May 10, 2019, in accordance with Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), for refusing chemical testing.[2]  (R.R. at 1.)[3]  Licensee filed a statutory appeal of the suspension on May 3, 2019.  (*Id.* at 70.)  Following a number of continuances, common pleas held a *de novo* hearing on March 15, 2022.  The Bureau presented the testimony of Officer Jacob Allen of the Upper Providence Township Police Department and submitted certified copies of Licensee's records.  (Exs. C-1, C-2.)  Common pleas summarized Officer Allen's testimony as follows:

> On March 17, 2019 at 2:51 in the morning Officer [] Allen . . .  was on patrol when he was advised by his Sergeant that he observed a vehicle traveling on Route 29 getting onto Route 422 East.  ([Notes of Testimony (]NT[)], 3/15/2022, p. 6).  [The] Sergeant [] observed the vehicle was missing its rear driver's side tire[.]  (NT, 3/15/2022, p. 6).  The Sergeant initiated a traffic stop on [Licensee] and requested Officer [] Allen [at] the scene to take over the stop.  (NT, 3/15/22 p. 6).  Officer Allen arrived to the scene and observed [Licensee] had extremely bloodshot eyes, [and] slurred speech, and [Officer Allen] could smell a strong odor of an alcoholic beverage.  (NT, 3/15/2022, p. 7).  In addition [] Officer [Allen] observed [Licensee] was bleeding from the bridge of his nose.  (NT, 3/15/2022, p. 7).  During the course of the stop [Licensee] informed [] Officer [Allen] he was in a fight within the Phoenixville Borough.  (NT, 3/15/2022, p. 7).  [Licensee] was unaware he had any injuries to his face, and he did not complain of any pain

---

[1] The pagination of Licensee's Reproduced Record does not comport with Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 (requiring that the pagination of reproduced records be in the form of an Arabic number followed by a small "a").  We will utilize the page number provided but omit the leading "R."

[2] Section 1547(b)(1)(i) of the Vehicle Code states, in relevant part, "[i]f any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so . . . the [Bureau] shall suspend the operating privilege of the person . . . for a period of 12 months."  75 Pa.C.S. § 1547(b)(1)(i).

[3] In addition to the Notice of Suspension, Licensee received a Notice of Disqualification related to his commercial driving privileges, which was also for a period of one year.  (R.R. at 6.)

2

during the investigation. (NT, 3/15/2022, p. 7). [] Officer [Allen] then ran multiple sobriety tests on [Licensee], and observed a couple signs of impairment, when [] Officer [Allen] asked [Licensee] to take his right hand and touch his nose[,] he placed the right index finger underneath his nose before readjusting and placing it on his nose. (NT, 3/15/2022, p. 9). Following the sobriety tests and a breath test [Licensee] was placed under arrest for suspicion of a DUI and was transported to Phoenixville Hospital. (NT, 3/15/2022, p. 12).

At 3:45 in the morning [] Officer [Allen] read [Licensee] the PA DL-26B blood test warnings under . . . Section 1547. [] Officer [Allen] informed [Licensee] of the warnings and he promptly said, "no, absolutely not." (NT, 3/15/2022, p.12). [] Officer [Allen] then asked [Licensee] if he was sure he wanted to refuse the chemical testing and he replied he did not want to take the test, and finally [] Officer [Allen] gave him one final chance and [Licensee] said no. (NT, 3/15/2022, p. 12).

[] Officer [Allen] said [Licensee] never complained of any pain, and never indicated he could not understand what was being said when read the DL-26. (NT, 3/15/2022, p. 12). . . .

(Common Pleas Opinion (Op.) at 1-2.)

Licensee presented the expert testimony of Dr. Neil S. Kaye, a board-certified psychiatrist, who testified via Zoom, as follows. Dr. Kaye interviewed Licensee by telephone and reviewed Licensee's medical records from Patient First. (R.R. at 42.) Based upon this, Dr. Kaye opined in both his report and in his testimony that it was "possible" that Licensee's behavior when he was arrested was caused by a concussion. (*Id.* at 45-46, 52-53, 55-56; Ex. D-2.) When asked on cross-examination if he could state to a reasonable degree of medical certainty that Licensee had a concussion, Dr. Kaye responded "no" and that the documents he "reviewed **suggested** that [Licensee] sustained a concussion." (R.R. at 50 (emphasis added).) Dr. Kaye further testified that a prescription Patient First issued

3

referenced a "concussion" but "[t]hat's all there is. There's no description of any of his symptoms. I don't know how [Patient First] reached that diagnosis, and so I can only tell the Court what is in the records." (*Id.* at 51.) On redirect when being questioned about his report, Dr. Kaye stated to Licensee's then-counsel:

> [Y]ou and I have gone around on this for hours prior to this report being issued.
>
> . . . .
>
> And I said that I am a hundred percent certain that it is possible. I understand you want me to say to a reasonable degree of medical certainty that this is what happened, and I told you I am not able to say that.
>
> What I am able to say is that I am sure that it's possible. That's not the same as saying this is definitely what I believe happened.
>
> . . . .
>
> I opine that his behavior may, may, if possible, have been influenced by a concussion.

(*Id.* at 56.)

Jay Bauer, Licensee's father (Father),[4] testified as to Licensee's physical and mental condition when police dropped Licensee off following his release, Licensee's history of concussions, the damage sustained to the vehicle Licensee was driving from a collision, and the subsequent treatment Licensee received at Patient First. (*Id.* at 58-62.) Licensee also testified on his own behalf and stated he did not remember much about that night. (*Id.* at 64.)

On March 16, 2022, common pleas entered the Order denying Licensee's statutory appeal and reinstating the suspension.[5]

---

[4] Father, a licensed attorney, now represents Licensee in his appeal to this Court.

[5] Common pleas had previously granted supersedeas.

4

Licensee subsequently filed a motion for reconsideration, which was denied. (*Id.* at 68; 4/7/22 Order, Record Item 25.)  On April 7, 2022, Licensee filed a timely notice of appeal.  On May 6, 2022, common pleas issued an opinion in support of its Order.  Therein, common pleas reasoned that the Bureau had satisfied its burden of showing Licensee was offered a meaningful opportunity to submit to chemical testing after being placed under arrest for suspicion of DUI.  (Op. at 3.)  Common pleas further reasoned that the expert testimony provided did not establish that Licensee had a concussion, only that it was a "possibility," and common pleas found this testimony was "not conclusive or persuasive."  (*Id.* at 4.)  As a result, common pleas held that Licensee did not satisfy his burden of proving his refusal was not "knowing and conscious."[6] (*Id.*)

## II.    PARTIES' ARGUMENTS

Licensee argues he did not make a knowing refusal to submit to chemical testing because of the concussion he sustained.  He further argues common pleas did not consider all evidence in its decision to credit the statement of Officer Allen and not that of Dr. Kaye.  Finally, Licensee asserts he should not have been subject to a civil suspension of his operating privilege because the Commonwealth dismissed his DUI charges.  Accordingly, he asks the Court to reverse common pleas' order.[7]

In response, the Bureau argues that, pursuant to Pennsylvania Rule of Appellate Procedure 2119(a), Pa.R.A.P. 2119(a), Licensee waived his argument that

---

[6] The conclusion section of common pleas' May 6, 2022 Opinion states:  "This Court properly granted [Licensee]'s appeal to **rescind** the suspension."  (Op. at  4 (emphasis added).)  However, based upon the analysis contained in the Opinion and the March 16, 2022 Order, this statement appears to be an error.

[7] In the Conclusion section of Licensee's Brief, Licensee also requests the Court to direct common pleas "to enter a judgment that the license suspension of [Licensee] be **reinstated**." (Licensee's Br. at 12 (emphasis added).)  Presumably, this latter part is error.

common pleas did not consider all the evidence because Licensee did not develop this argument in his brief. Notwithstanding, the Bureau argues it is without merit because Dr. Kaye did not testify within a reasonable degree of medical certainty that Licensee did, in fact, suffer a concussion that would have impacted his ability to make a knowing and conscious decision.

Additionally, the Bureau argues that "[t]here is no merit to [Licensee]'s argument that in order for the Bureau to impose a suspension of his operating privilege in accordance with 75 Pa.C.S. § 1547, 'there must be a DUI charge.'" (Bureau's Br. at 14.) The Bureau cites *Glass v. Department of Transportation, Bureau of Traffic Safety*, 333 A.2d 768, 770 (Pa. 1975), and asserts "in order for a police officer to request chemical testing, it is not necessary that the officer make a formal arrest. All that is required is that [the] licensee be subject to the custody and control of the police officer." (Bureau's Br. at 14.) Furthermore, the Bureau asserts "[d]ismissal of the underlying criminal charges does not affect the arresting officer's 'reasonable grounds' to believe that [the] licensee was operating a vehicle while under the influence" and "it is not necessary that [the] licensee be tried or convicted of DUI." (*Id.* at 16 (citations omitted).)

## III. DISCUSSION

To sustain the Bureau's suspension of a licensee's operating privilege in situations such as this, the Bureau

> must establish that the licensee: (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension. Once [the

6

Bureau] meets this burden, the licensee must then establish that the refusal was not knowing or conscious or that the licensee was physically unable to take the test.

*Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010) (internal citations omitted). However, if a licensee's ability to make a knowing and conscious refusal was caused, even partially, by intoxication, "the licensee is precluded from meeting [their] burden as a matter of law." *Id.* at 340.

On the first issue, Licensee argues he did not make a knowing refusal to submit to chemical testing because of the concussion he sustained. This Court in *Kollar* stated that "[t]he medical expert must rule out alcohol as a contributing factor to the licensee's inability to offer a knowing and conscious refusal in order to satisfy the licensee's burden." *Id.* In *Kollar*, we reversed the trial court's order sustaining a licensee's appeal of her operating privileges. *Id.* at 338. The Court rejected the licensee's argument that she was unable to make a knowing and conscious refusal of chemical testing due to her injuries when the Court found the testimony of licensee's medical expert to be equivocal when the expert was not certain that the "[l]icensee's injuries would have rendered [the l]icensee incapable of offering a knowing and conscious refusal regardless of any alcohol consumption." *Id.* at 342.

In the present case, Licensee's medical expert has presented similar testimony. Dr. Kaye repeatedly testified that it was "possible" that Licensee's behavior was the result of a "possible" concussion. (R.R. at 45-46, 52-53, 55-56; Ex. D-2.) This is the epitome of equivocal medical opinion. *Kollar*, 7 A.3d at 340 ("A medical opinion is equivocal if it is merely based on possibilities."). Because the expert testimony could not establish that Licensee's refusal was the product of a medical condition and not influenced by alcohol consumption, common pleas

7

correctly concluded that Licensee could not meet his burden that the refusal was not knowing and conscious.

On the second issue, Licensee argues common pleas did not consider all evidence in its decision to credit the statement of Officer Allen and not that of Licensee's medical expert. The Bureau responds by arguing that Licensee's argument is waived per Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure because he did not develop the argument in his brief. (Bureau's Br. at 10-11.) We find that while not extensively discussed, the issue was adequately raised by Licensee. Although the issue has not been waived, "it is not the province of this Court to make new or different findings of fact. . . . As long as sufficient evidence exists that is adequate to support the facts found by the trial court . . . we are precluded from overturning those findings." *Reinhart v. Dep't of Transp., Bureau of Driver Licensing,* 954 A.2d 761, 765 (Pa. Cmwlth. 2008) (internal citations omitted). As stated above, Dr. Kaye's testimony was incompetent because it was equivocal. *Kollar*, 7 A.3d 336 at 340. To the extent Licensee challenges other findings of common pleas, upon review of the record, we find they are supported by substantial evidence. Furthermore, to the extent Licensee argues common pleas should have credited Dr. Kaye over Officer Allen, it is not the "province of this Court" to overturn the credibility determinations of common pleas. *Reinhart,* 954 A.2d at 765.

On the third issue, Licensee argues that he should not have been subject to a civil suspension of his operating privilege when the Commonwealth dismissed his DUI charges. "The law is clear that, regardless of the disposition of the criminal charge, the refusal to take the breath test is a separate consideration, the suspension for which is an independent civil proceeding." *Wisniewski v. Commonwealth of*

8

*Pennsylvania*, 457 A.2d 1334, 1337 (Pa. Cmwlth. 1983). *See also Ponce v. Dep't of Transp., Bureau of Driver Licensing*, 685 A.2d 607, 609-610 (Pa. Cmwlth. 1996) (affirming the trial court's dismissal of the licensee's appeal and holding that the Bureau's suspension of licensee's operating privilege following his acquittal of the offense of DUI was proper and did not violate the Double Jeopardy Clause of the United States Constitution, U.S. Const. amend. V.) Licensee's civil suspension for refusing chemical testing and his criminal charge for DUI are separate and independent of each other even when they arise out of the same incident. As a result, common pleas did not err in affirming the suspension of Licensee's operating privileges.

## IV.    CONCLUSION

Based on the aforementioned precedent, we discern no error in common pleas' finding that Licensee's refusal of chemical testing was knowing and conscious. Furthermore, we hold that based on this precedent, the imposition of Licensee's suspension was proper even after the criminal charges against Licensee were dismissed. In light of the foregoing, we affirm the Order of common pleas.

_____
**RENÉE COHN JUBELIRER,** President Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Evan Bauer,                         :
              Appellant      :
                         :
          v.              :   No. 412 C.D. 2022
                         :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing       :

## O R D E R

**NOW**, September 20, 2023, the Order of the Court of Common Pleas of Montgomery County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge